Next in Wilkoff v. Ameriprise Financial Services, 171388. I'm Jennifer S. Wilkoff, an appellee in the case 171388. The issues of this case that I want to raise are that as far as the . . . excuse me . . . the District Court Judge Hellerstein initially was submitted this case and the next day returned it with no relation to the existing case. All of the information that Ameriprise and also the District Attorney have submitted in conjunction with this case were all thereby not related and the timing and the time frame does not apply. So all of the decision making that Justice Taylor Swain made does not apply because the facts that were presented were not appropriate. One of the other arguments that Ameriprise also raised was res judicata. There was no res judicata for Ameriprise in that same case that was also deemed unrelated because there was no decision that was ordered and there was no judgment or order that was made. Magistrate Gorenstein turned that down in his statements. So there was never a decision and there's no res judicata to point to. The other pieces that I also want to raise is that Ameriprise hid their fraudulent behaviors and the time frame that is related is the time frame that is prior to this and it's in my brief so I'm not going to bore you with those details. But basically the compliance supervisor did not provide the appropriate supervision. They did not provide that information and also in the second amended complaint, the you're not required that you have to bring all this evidence forward. That's what discovery is for. Discovery is for evidence to be provided to speak to the different things that are raised in a second amended complaint. So her dismissal is inappropriate but also it's not required that all of that information be provided and that's based on law. The other thing with the district attorney's office, since I still have a minute, is that their unethical and inappropriate behavior of their handling of my criminal case and their prosecutorial misconduct was also hidden. So when you talk about the fraudulent concealment that was occurring, it was occurring on both sides and primarily by Ameriprise because they were supposed to provide, according to the franchise agreement, compliance supervision that was in association, which is what was required by FINRA and they did not. And that was proven and it also was proven in the FINRA arbitration, which showed that they basically did not provide it. So because of all of these things, I'm asking that the court reverse the motions to dismiss because they actually do not apply. And I'm done. You've reserved two minutes for rebuttal. Ms. Wolkoff, we'll hear from Mr. Zaretsky and Ms. Bailey and then we'll hear from you. Thank you. Good morning, Your Honors. Michael Zaretsky for Ameriprise Financial Services, Inc. In light of the relatively brief period of time I have for argument, I believe the parties have pretty well set forth the relevant facts and arguments. With respect to Ms. Wolkoff's position that because Judge Hallerstein did not accept the matter or returned it as not related, I don't believe it's relevant to the arguments that are before the Court today. The arguments or facts we cited with respect to what took place in the Charney action in the district court are relevant and the Court can take judicial notice of them in this case. And that's why we cited them, not because in some way they were related matters. With respect to the issue of claim preclusion, we've briefed that. And because of the fact that Ms. Wolkoff, in particular at a time when Ameriprise was still a party to the Charney action, did not, and represented by counsel, did not assert any claims against Ameriprise. And we believe that the decision of Judge Hallerstein in that case that found Ms. Wolkoff responsible for the actions that caused the losses of these various investors that she says led to ultimately the loss of her career has been determined already. What is your position on Ms. Wolkoff's position in her brief that the failure of Ameriprise to notify her that the supervisor had been disciplined constitutes an affirmative act of concealment such that the statute should be told? Well, two things. With respect to the notification of the discipline, Ms. Wolkoff was long terminated, had long since left Ameriprise when that took place, is my recollection. And in addition, Ms. Wolkoff, in the complaint, her amended complaint, alleges that she was told from the very outset when she first mentioned it to the supervisor, that she alleges that she told him about it, these real estate investments in California, that he told her she was, quotes, on her own, and that Ameriprise did not have anything to do with outside real estate investments. And that's cited to, not only in our brief, but in this. I understand that goes to the breach of contract point, but this is a tolling issue. Yes, Your Honor. And I'm saying that there was no opportunity or possibility of, quotes, concealing it from her because the discipline took place after she no longer was associated with Ameriprise, just for starters. I don't know if that fully answers the question, but there was no concealment of it. She had nothing to do with the company anymore. And he was, in fact, disciplined as alleged. In addition, as far as a claim of fraudulent concealment goes, as we argued in our brief, there has to be an additional element of either a fiduciary duty or some having material information that the other party doesn't have, and there was no such information of that type in this case. I see my time is basically up. I don't know if the Court has any questions, further questions for me. Thank you. Thank you, Your Honors. Ms. Daly. Good morning, Your Honors. Patricia Bailey on behalf of the New York County District Attorney, Cyrus Vance. Your Honors, it's our position that clearly the district court was correct in finding that Ms. Wolkoff is not entitled to any sort of equitable relief, be it via injunction or writ of mandamus, nor did she make out a State claim of malicious prosecution, basically because at the first level she failed to comply with the condition precedent of making the allegations or filing a notice of claim within 90 days and moving the complaint within a year and 90 days. With respect to the equitable relief she seeks, the underlying claim appears to be that she seeks an injunction to ask the district attorney to reopen her conviction and prosecution because she believes that since Ameriprise did not adequately supervise her, somehow or another that relieves her of her guilt. It has nothing to do with her guilt. Whether or not Ameriprise adequately supervised her doesn't take away from the fact that she lied to her victims and misrepresented her position regarding the investment when she talked to her investors. So what she's basically saying, it sounds as if that I'm a licensed professional and because I didn't have a supervisor telling me not to lie to my investors, I should be free of guilt, but it doesn't work that way. At the end of the day, she remains guilty and her plea allocution was extensive as to the types of lies that she told her victims and for how long and how many. With respect to the claim that the forfeiture proceeds were somehow inappropriately dispersed, she was represented by counsel. They were both disbursed of the legal counsel fees as well as the restitution that was ordered both in the forfeiture court and in the criminal court and supreme in both cases were both court-ordered. She was represented by counsel. We did not, obviously, the district attorney's office did not disperse the restitution from the Supreme Court by Judge Wittner. That was done by the court. And with respect to the forfeiture orders, it was done through the Judge Shulman laying forth which victims got how much and it was dispersed accordingly as the records that she applied attached to her reply brief or reply, I guess, addendum. Each of those checks set forth how much into each of the victims. Six minutes left, I don't know if you have any questions. Thank you very much, Ms. Wolff. Thank you. That's supposed to take two, it says 104. Thanks. There you go. Okay, thank you. So one of the things that I want to reply to is Ameriprise and not only did they not copy me on any of the disciplinary actions of Ameriprise which were involved in the FINRA hearing, but also if you think about it with the franchise agreement, I was a financial advisor. According to the way that the financial advisor community works and according to FINRA, I as a financial advisor am told to be dependent upon my supervisor. A supervisor has a series 24 which allows them to actually provide compliance supervision. As proven in the FINRA . . . What was your license? My license was a series 7. Okay. So this person had 15 plus years of experience over me at the time. So basically, you're told as a financial advisor to depend on the people who are supervising you, especially a compliance supervisor. So when that compliance supervisor doesn't follow the registered principles information or the NASD rules, how are you supposed to know and call them out on it when you have less experience than they do? They are the people who are supposed to be following the rules. I signed the franchise agreement, but that also has a clause in it which does not allow them to get out of their responsibility to supervise. And that's really important for this court to consider because it says, in the franchise agreement, except for any claim based solely on the willful misconduct or gross negligence of AmeriPrize Financial, American Express Financial Advisor, which it was at the time, or its officers, agents, and employees were based solely on non-performance by American Express Financial Advisors of its obligations here under. In the franchise agreement, when I signed the franchise agreement, of course I read it, but I'm not the person that is supposed to hold them to every single thing in the franchise agreement. They are the people that are supposed to know what to do with the information that I provide them with, know what to do when I ask a question because they're supervising me. Otherwise, you would be telling every single person who is a financial advisor that they should be able to call out their compliance supervisors for the things that they're not doing. But I'm telling you that that is unreasonable because the people that are underneath them, if you will, are basically relying on them for their supervision. And if they can't provide the compliance supervision that's actually stated and provided through the franchise agreement, what is a financial advisor to do? I mean, honestly, what are we supposed to do? Because we're supposed to depend on them. And if I bring a question, which I had done prior to any of these investments, to my compliance supervision and my branch manager and the person at American Express Financial Advisors who was supposed to be supervising me, who was supposed to be following the NASD rules, who was supposed to be actually providing this type of supervision, and failed. And that's the person who basically told me he was monitoring my book of business. He is the person who lacked and did not provide that compliance supervision. And that's why the period of time that this decision was made on is wrong. Because that's the time when I was actually supposed to be supervised and was not. We understand your argument. We appreciate it. Thanks.  We'll reserve the decision. Thank you, Your Honor. The last matter on the calendar is Pali Guachi v. Sessions, 172612, which is submitted. And I'll ask the clerk to adjourn court.